UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TYRONE L.,[1]

                 Plaintiff,

      v.

Andrew M. Saul, et al.,

                 Defendants.

Case No. 18-cv-04575-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 22, 27

## I.    INTRODUCTION

Plaintiff Tyron L. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Nancy A Berryhill, then-Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits.[2]  Pending before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 22 (Pl.'s Mot.), 27 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.    BACKGROUND

### A.    Age, Education and Work Experience

Plaintiff is 49 years old.  AR 79.  While attending school he was assigned to special education classes due to a learning disability.  AR 38.  He completed either the eighth or ninth

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] This action was originally brought against Acting Commissioner Nancy Berryhill.  Pursuant to Fed. R. Civ. Proc. 25(d), Andrew M. Saul was automatically substituted as the Defendant.

grade of school but was "kicked out" for being a "problem child." AR 36-37. Plaintiff's last job was at Nordstrom through the temp agency Volt in 2004. AR 39. His duties encompassed "basically just hanging up clothes." AR 44. He was fired due to missing too many days of work. AR 46. Prior to Nordstrom, Plaintiff worked in a warehouse doing various temp jobs. AR 427.

**B.    Medical Evidence**

**1.    Eastmont Wellness Center**

On September 30, 2014, Plaintiff met with a treating mental health provider at Eastmont Wellness Center, Jacqueline Shiels, acting under the supervision of Hilary Combs, Psy.D., who diagnosed him with Post-Traumatic Stress Disorder ("PTSD"). AR 427-35. Plaintiff reported that he had learning problems, including a history of special education and a lack of education beyond the ninth grade. AR 428, 430. He also reported sleep- and pain-related concerns. AR 430. Plaintiff told Ms. Shiels, "I am not that good with paperwork . . . I did not do good in school." *Id.* Ms. Shiels assigned a Global Assessment of Functioning score of 58,[3] and upon a mental status examination, documented that Plaintiff exhibited slowed thinking, partial insight, and moderately impaired ability to make reasonable decisions. AR 426, 431.

Plaintiff saw Ms. Shield once more on October 7, 2014. AR 424-26. His primary concern was getting refills of pain medication. AR 424. Ms. Shields told Plaintiff to consult with a primary care practitioner about an antidepressant that could help him with his pain management, and she suggested a psychology follow up in four to six weeks. AR 425.

**2.    Katherine Wiebe, Ph.D.**

Katherine Wiebe, Ph.D., is an examining psychologist who performed a psychological evaluation of Plaintiff on March 6, 2017, including a clinical interview, administration of ten separate psychological tests, and review of Plaintiff's medical and mental health records. AR 516-

---

[3] A Global Assessment of Functioning ("GAF") score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. *See* Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. text rev. 2000). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31-34 (4th ed. 2000).

533. As noted in her report, the evaluation was based on one session of client contact. AR 517.

Dr. Wiebe diagnosed Plaintiff with: Major Depressive Disorder, recurrent episode, severe with anxious distress; PTSD; other specified personality disorder with Schizoid Personality Traits, Avoidant Personality Traits, Paranoid Personality Features, and Antisocial Personality Features; Unspecified neurocognitive disorder; Specific learning disorder, with impairment in written expression. AR 529. She determined his PTSD was associated with his history of violence, including having been stabbed. AR 528. She also noted that he takes medication to treat his anxiety, depression and pain. *Id.*

Dr. Wiebe also indicated that Plaintiff has severe impairments in attention/concentration, short-term memory, long-term memory, language, visual-spatial organization, and ADLs. AR 532. She determined that he has moderate to severe impairment in executive functioning and social functioning; moderate impairment in judgment/insight; and mild impairment in intellectual functioning, orientation, and motor/praxis. *Id.* She explained that Plaintiff's cognitive problems impair his ability to attend to, remember, and follow through with tasks and directions. AR 529. Dr. Wiebe also determined he has problems accomplishing activities of daily living due to his psychiatric and cognitive functioning problems. *Id.* She noted he has tendencies for cognitive distortions, emotional dysregulation, and problems with social interactions. *Id.* He also has problems with depression, irritability, social avoidance, paranoid thinking, hypervigilance, suspiciousness, fatigue, and anger outbursts. *Id.* Dr. Wiebe concluded that he would have difficulties being able to relate and communicate effectively and reliably with supervisors, co-workers, and the public in a work environment and that, due to his long-term cognitive and psychiatric disorder symptoms, he would have difficulty being able to work on a full-time basis for two years, even if he did not use any more substances. *Id.*

Dr. Wiebe did not evaluate his physical medical problems as they are beyond the scope of her assessment. *Id.* As to potential for treatment, Dr. Wiebe reported that "[a]lthough there may be some difficulty in engaging him in serious therapy, compliance need not be problematic with extra efforts devoted to showing a caring attitude." AR 525.

### 3. Gino Inesi, MFT

On December 24, 2012, Gino Inesi, MFT, completed a "Mental Health Clinician's Confidential Report" form that documented a diagnosis of PTSD and a GAF of 55. AR 536-37. Inesi found Plaintiff had marked limitations in several mental work-related categories, including the ability to: carry out very short and simple instructions; maintain attention for extended periods-two hour segments or more; work in coordination or proximity to others without being unduly distracted by others; make simple work-related decisions; complete a normal workday and work-week without interruptions from psychologically based symptoms and to perform consistent pace without an unreasonable number and length of rest periods; and respond appropriate to changes in a routine. AR 536-37.

### 4. Farrell Barnett, M.D.

On August 5, 2014, Plaintiff saw primary care doctor Farrell Barnett, M.D., complaining of back, neck, and knee pain and requesting Dr. Barnett complete a form for General Assistance. AR 448-50. Plaintiff reported that he could not stand to be around people and therefore he felt he was unable to work. AR 448. On psychiatric exam, Dr. Barnett found Plaintiff oriented as to time, place, person, and situation; had normal insight and exhibits normal judgment; and demonstrated appropriate mood and affect. AR 450. Psychiatric findings at a subsequent appointment on September 16, 2014, were likewise normal. AR 439-41. In a patient plan dated September 16, 2014, Dr. Barnett instructed Plaintiff to stop using marijuana to help with insomnia. AR 442. Dr. Barnett indicated he would refer Plaintiff "to psychology" for possible anxiety. *Id*. Subsequent treatment records from Dr. Barnett consistently show normal mental status findings and do not mention any mental disorders. AR 510, 514-15, 548.

### 5. Patricia Spivey, Psy.D.

On December 4, 2014, Patricia Spivey, Psy.D., performed a psychological evaluation. AR 478-81. Dr. Spivey documented Plaintiff's complaints of paranoia and fear of heights and small spaces. AR 479. However, she observed that he was alert and oriented, had a neutral mood and congruent affect, had unremarkable thought content, and had a linear, goal-directed thought process. *Id*. Her test results showed Plaintiff had deficits across areas including verbal

4

comprehension, reasoning, calculations, processing speed, memory, calculation, abstraction ability, and he had borderline to extremely low IQ scores. AR 479-80. However, she questioned the validity of the test results, noting that Plaintiff made little effort on the test and responded "I do not know" after numerous questions, when the answers could have been worked out with minimal effort. AR 480. Ultimately, Dr. Spivey diagnosed Plaintiff with Polysubstance Dependence, Anxiety Disorder, and Antisocial Personality Disorder. *Id.* She found that Plaintiff has no impairment in his ability to: follow simple or complex instructions, maintain adequate pace or persistence to complete 1-2 step simple repetitive tasks or complex tasks, maintain adequate attention/concentration, adapt to changes in job routine, verbally communicate effectively with others, and communicate effectively in writing. AR 480-81. Further, she found that Plaintiff only had mild impairment in the ability to maintain emotional stability/predictability and moderate impairment in withstanding the stress of a routine work day and in interacting appropriately with coworkers, supervisors and the public on a daily basis. AR 481.

### III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On July 31, 2014, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on January 1, 1997. AR 79-80, 93-94, 214, 218. Plaintiff subsequently amended his alleged onset date to September 1, 2004. AR 15, 335. On January 23, 2015, the Social Security Administration denied Plaintiff's claim, finding he did not qualify for disability benefits. AR 136-45. Plaintiff subsequently filed a request for reconsideration, which was denied on May 8, 2015. AR 149-59. On September 10, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 162, 164-67. ALJ Evangelina P. Hernandez conducted a hearing on April 10, 2017. AR 34-78. Plaintiff testified in person at the hearing and was represented by counsel, Alan Dunnigan.

#### A. Plaintiff's Testimony

Plaintiff testified he has anxiety that is triggered when he is around a lot of people. AR 50. He gets nervous, dizzy, has difficulty breathing, and he starts to feel like he is going to faint. *Id.* For example, he testified to being nervous during his testimony and as a result feeling like his heart was racing and he wanted to leave. *Id.* He feels the same way in public spaces. *Id.* Plaintiff

testified to feeling paranoid around crowds of people and "being on heights." AR 51. The effects of his paranoia are the same as those of his anxiety: dizziness, difficulty breathing, and feeling faint. *Id.* At the time of his testimony, he was taking Trazadone, a sleep aid, and pain medication. *Id.*

Plaintiff testified that he was fired in 2004 during his probationary period at Nordstrom because he missed too many days of work, which he said was due to being stressed out and hospitalized. AR 39-40, 43-46. He testified he was fired from every job he ever had, with the reasons varying from being too late to not getting along with others. AR 49. All his employers said he had an "attitude problem." *Id.* He also struggled with following instructions at work. AR 68.

Plaintiff stays mostly at home, watching television or playing games on his phone, and does not have any hobbies or activities outside the home. AR 53. For the most part, he only ventures outside to smoke a cigarette and stretch his legs. AR 54. He lives with his landlady who performs most household tasks for him (such as cooking and cleaning) and reminds him of his medical appointments. AR 54, 57. Plaintiff stated that he has thought about suicide, has hurt other people, and been hurt by others through physical violence. AR 56. He testified that he had been beaten up and he was in a number of motorcycle accidents and bad car accidents, but he was never treated at a hospital, explaining that he did not like hospitals and went only if he had to. AR 47. He testified that when he was messing around with "a bunch of friends," a car fell on his left leg and crushed it, but he did not pursue treatment. AR 48.

Regarding physical ailments, Plaintiff testified that he can probably lift 10 to 15 pounds. AR 60. He stated that simple tasks like making the bed cause pain in his back. *Id.*

Plaintiff struggled with alcoholism since his teenage years. AR 63. He stopped drinking liquor and switched to beers after doctors warned him about long term effects of drinking on his liver. AR 63-64. He also smokes marijuana a couple of times a month. AR 66.

**B.     ALJ's Decision and Plaintiff's Appeal**

On June 19, 2017, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 12-25. This decision became final when the Appeals Council declined to review it

on March 13, 2017. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On January 16, 2019, Plaintiff filed the present Motion for Summary Judgment. On March 14, 2019, Defendant filed a Cross-Motion for Summary Judgment.

## IV.   STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted). It requires "more than a mere scintilla," but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted). A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111 (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

# V.    DISCUSSION

## A.    Framework for Determining Whether a Claimant Is Disabled

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[4]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since September 1, 2004.  AR 18.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.  20 C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe impairments: alcohol abuse, anxiety disorder, and antisocial personality disorder.  AR 18.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments").  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's

---

[4] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

1    impairment either meets the listed criteria for the diagnosis or is medically equivalent to the

2    criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age,

3    education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did

4    not have an impairment or combination of impairments that meets the listings. AR 19.

5        Before proceeding to step four, the ALJ must determine the claimant's Residual Function

6    Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work

7    setting, despite mental or physical limitations caused by impairments or related symptoms. 20

8    C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the

9    claimant's medically determinable impairments, including the medically determinable

10   impairments that are nonsevere. 20 C.F.R. § 404.1545(e).

11       In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as

12   well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)-(d), 416.945(b)-

13   (d). With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical

14   demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or

15   other physical functions (including manipulative or postural functions, such as reaching, handling,

16   stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* §§

17   404.1545(b), 416.945(b). With respect to a claimant's mental abilities, "[a] limited ability to carry

18   out certain mental activities, such as limitations in understanding, remembering, and carrying out

19   instructions, and in responding appropriately to supervision, coworkers, and work pressures in a

20   work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§

21   404.1545(c), 416.945(c). Additionally, "[s]ome medically determinable impairment(s), such as

22   skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s)

23   which impose environmental restrictions, may cause limitations and restrictions which affect other

24   work-related abilities." *Id.* §§ 404.1545(d), 416.945(d).

25       Here, the ALJ determined Plaintiff has the RFC to perform light work: he could lift and/or

26   carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six hours each in an

27   eight-hour workday; frequently perform all postural activities; perform simple work with routine

28   and repetitive tasks; and could occasionally interact with the general public, coworkers, and

9

1    supervisors.  AR 20.

2         The fourth step of the evaluation process requires that the ALJ determine whether the

3    claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv);

4    404.1520(f).  Past relevant work is work performed within the past 15 years that was substantial

5    gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. §

6    404.1560(b)(1).  If the claimant has the RFC to do his past relevant work, the claimant is not

7    disabled.  20 C.F.R. § 404.1520(a)(4) (iv).  Here, the ALJ determined Plaintiff could not perform

8    past relevant work.  AR 23.

9         In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there

10   are other jobs existing in significant numbers in the national economy which the claimant can

11   perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

12   404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of

13   a vocational expert or by reference to the Medical-Vocational Guidelines. at 20 C.F.R. pt. 404,

14   Subpt. P, App. 2.  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). [5]  Here, the ALJ

15   determined that Plaintiff is not disabled and could perform to other jobs that exist in significant

16   numbers in the national economy.  AR 24.

**B.    Plaintiff's Arguments**

18        Plaintiff raises six arguments: (1) the ALJ erred in evaluating medical opinions; (2) the

19   ALJ erred in finding his Neurocognitive Disorder, Specific Learning Disorder, PTSD, and Major

20   Depressive Disorder were not severe at Step Two; (3) the ALJ erred in rejecting Plaintiff's

21   testimony; (4) the ALJ erred in determining his impairments did not meet or equal a listing; and

22   (5) the ALJ erred in determining his RFC; and (6) the ALJ erred in determining he could perform

23   other work at step five.

**C.    Medical Opinions**

25        Plaintiff maintains the ALJ erred in evaluating the medical opinions of record, arguing she

26   rejected the opinions of examining psychologist Dr. Wiebe and MFT Inesi without providing

27   _____

28   [5] The Medical-Vocational Guidelines are commonly known as "the grids".  *Lounsbury*, 468 F.3d
     at 1114.

1    specific and legitimate reasons supported by substantial evidence, and erred in according great

2    weight to consultative examiner Dr. Spivey.  Pl.'s Mot. at 4-12.

3        **1.    Legal Standard[6]**

4        When determining whether a claimant is disabled, the ALJ must consider each medical

5    opinion in the record together with the rest of the relevant evidence.  20 C.F.R. § 416.927(b);

6    *Algazzali v. Colvin*, 2016 WL 394009, at *6 (N.D. Cal. Feb. 1, 2016).  In deciding how much

7    weight to give to any medical opinion, the ALJ considers the extent to which the medical source

8    presents relevant evidence to support the opinion.  20 C.F.R. § 416.927(c)(3).  Generally, more

9    weight will be given to an opinion that is supported by medical signs and laboratory findings, and

10   the degree to which the opinion provides supporting explanations and is consistent with the record

11   as a whole.  20 C.F.R. § 416.927(c)(3)-(4).

12       In conjunction with the relevant regulations, the Ninth Circuit "developed standards that

13   guide [the] analysis of an ALJ's weighing of medical evidence."  *Ryan v. Comm'r of Soc. Sec.*,

14   528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).  Courts "distinguish among the

15   opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

16   those who examine but do not treat the claimant (examining physicians); and (3) those who neither

17   examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830

18   (9th Cir. 1995).  Where an examining doctor's opinion is contradicted by another opinion, as in

19   this case, an ALJ may reject it by providing specific and legitimate reasons that are supported by

20   substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

21       **2.    Analysis**

22           **a.    Dr. Wiebe**

23       In her decision, the ALJ explained that she gave "little weight" to Dr. Wiebe's

24   psychological evaluation "because her findings are not consistent with the claimant's limited

25

26   _____

27   [6] Rules regarding the evaluation of medical opinion evidence were recently updated, but the
     updates were made effective only for claims filed on or after March 27, 2017.  *See* 82 Fed. Reg.
     5844 (Jan. 18, 2017).  As Plaintiff's claim was filed before 2017, the Court evaluates the medical

28   opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§
     404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

treatment and normal mental examination findings of record" and "Dr. Wiebe's opinion appears overly reliant on claimant's subjective complaints." AR 23. Plaintiff argues the ALJ erroneously gave "less weight" to Dr. Wiebe's examination report based on the ALJ's view that "her findings are not consistent with the claimant's limited treatment and normal mental examination findings of record. Dr. Wiebe's opinion appears overly reliant on the claimant's subjective complaints." Pl.'s Mot. at 5. In response, Defendant argues the ALJ properly weighed conflicting medical-opinion evidence and provided specific and legitimate reasons explaining how she weighed the evidence and identified substantial evidence in the record supporting her findings. Def.'s Mot. at 11.

Having reviewed the record, the Court finds the ALJ permissibly assigned "little weight" to Dr. Wiebe's opinion because the marked limitations were inconsistent with the evidence of record, including Plaintiff's limited treatment and normal mental status findings. AR 23, 516-33. An ALJ may appropriately give less weight to an opinion that is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The ALJ identified specific inconsistencies between Dr. Wiebe's findings and the record as a whole. AR 18, 23. For example, in discussing Plaintiff's alleged PTSD, Dr. Wiebe wrote that he "appears to have experienced a traumatic event that may have involved a threatening situation or serious injury during which he suffered intense fear or pain," but provided no reference to any specific triggering event. AR 527. She added, "The residuals of this experience appear to persistently recur through distressing recollections, and he is likely to avoid exposure to the cues that resemble or symbolize aspects of the traumatic event in question." *Id.* When they cannot be avoided, he experiences "recurring nightmares or flashbacks," which "may result in . . . outbursts of anger, panic attacks, hypervigilance, an exaggerated startle response," or a detached disposition. AR 528. However, as the ALJ noted, the record contains no evidence of any specific traumatic event or place that triggers flashbacks or nightmares, and there is no discussion of flashbacks or nightmares in any treatment records other than during a single meeting with Hilary Combs, Psy.D., in the fall of 2014, right after Plaintiff applied for benefits. AR 18, 431.

Plaintiff argues that the existence of some "normal mental status findings" in the record

1  containing abnormal mental status findings is not a specific and legitimate reason and contends the

2  ALJ erred by picking out isolated examples of improvement and relying on these to conclude that

3  a claimant does not have a disabling mental illness.  Pl.'s Mot. at 7.  Contrary to Plaintiff's

4  assertion, and in stark contrast to Dr. Wiebe's findings, mental status findings throughout the

5  record are frequently unremarkable.  AR 441, 450, 506, 510, 514, 548.

6      Plaintiff also criticizes the ALJ's finding that he had limited mental health treatment,

7  arguing that is not a proper basis for rejecting a medical opinion regarding mental health.  Pl.'s

8  Mot. at 7-8.  Plaintiff cites *Regennitter v. Commissioner of Social Security*, 166 F.3d 1294 (9th

9  Cir. 1999).  In that case, the claimant did not seek treatment primarily because he could not afford

10  it and was thousands of dollars in debt.  *Id.* at 1296-97.  Here, Plaintiff has made no similar

11  showing that he is unable to afford care and in fact testified that that he did not go to hospitals

12  because he did not like them and went only if he had to.  AR 47.  Plaintiff next cites *Nguyen v.

13  Chater*, where the Ninth Circuit found it questionable" to "chastise" one with a mental impairment

14  for failure to seek psychiatric treatment, where the claimant had neither sought nor received any

15  mental health treatment.  100 F.3d 1462, 1465 (1996).  However, unlike the claimant in *Nguyen*,

16  Plaintiff is not someone who failed to "recognize that [his] condition reflects a potentially serious

17  mental illness."  *Id.*  Plaintiff alleged disability due to purported paranoia and claustrophobia,

18  indicating that he is well aware of his condition.  AR 248.  He also testified that he did not follow

19  through with a recommendation for counseling only because he never received a referral letter.

20  AR 73.  Regardless, the ALJ in this case did not chastise Plaintiff for failure to seek treatment; the

21  ALJ merely stated that the absence of any treatment is inconsistent with the severity of mental

22  impairments as reported in Dr. Wiebe's opinion.  AR 18-19, 20, 23.

23      Finally, Plaintiff contends the ALJ wrongly discounted Dr. Wiebe's opinion because it was

24  overly reliant on subjective complaints, arguing that this is not a specific or legitimate reason.

25  Pl.'s Mot. at 8.  However, undue reliance on a claimant's subjective complaints is a specific and

26  legitimate reason to reject a medical opinion – particularly when the opinion is based on subjective

27  complaints that are discredited.  *Bayliss*, 427 F.3d at 1216-17 (holding that an ALJ may reject a

28  physician's finding that is unsupported by the record or premised on a claimant's properly

13

discredited subjective complaints); 20 C.F.R. § 404.1527(c)(3) (opinions based on "medical signs and laboratory findings" are entitled to more weight than opinions based on an individual's subjective representations).  Plaintiff argues that Dr. Wiebe's report documents extensive objective clinical findings, but this ignores the fact that much of Dr. Wiebe's report is based on representations Plaintiff made during a one-time examination arranged by his disability attorney for the purpose of supporting Plaintiff's disability claim.  Dr. Wiebe explicitly acknowledged that her findings were "limited in scoped" and based on a single session, with background information "provided by the client."  AR 517.  Throughout her report, she referenced her reliance on Plaintiff's representations: "He reported" . . . difficulty with anxiety, depression, pain, and interpersonal relations, AR 517; he "reported" that he witnessed childhood violence, had seen 30 people killed, that he was kicked out of school, and he got into trouble whenever he was around people, *id.;* he "reported" he repeated a couple of grades in school and was in special education, AR 518; he "reported" a history of multiple head injuries and unconsciousness, AR 519; he "reported" that he was told he had a concussion, *id.*; he "reported" that he was unable to clean, and sometimes unable to put on his shoes, AR 520; he reported anxiety around people and difficulty taking public transportation, *id.*; he "reported" recent suicidal ideation. *id.*; he "reported" problems with numbness, tingling, trembling, dizziness, abdominal discomfort, and cold sweats, nightmares and flashbacks, AR 522-23; he "reported" a history of physical violence to others, and claimed he was sometimes so angry he wanted to kill someone, AR 523; and he "reported" that he had no friends, AR 524.  These reports are often unsupported by or inconsistent with representations made elsewhere in the record.  Nothing in Dr. Wiebe's report suggests that she observed Plaintiff's alleged nightmares, flashbacks, or angry outbursts; her findings are based on Plaintiff's own reports.

While Plaintiff may disagree with the ALJ's findings, the Court finds the record as a whole constitutes substantial evidence supporting the ALJ's decision.  Further, even "where the evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  It is the ALJ, not

the Court, that must resolve determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Thus, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Accordingly, because the ALJ provided specific and legitimate reasons for her evaluation of Dr. Wiebe's opinion, and substantial evidence supports the ALJ's findings, the decision must be affirmed.

### b. Mr. Inesi

Mr. Inesi examined Plaintiff on December 24, 2012 at the request of Alameda County Social Services and opined that he had marked limitations in his ability to carry out very short and simple instructions, work around others, and concentrate. AR 536-37. The ALJ assigned "little weight" to Mr. Inesi's opinion "because not only is a therapist not an acceptable medical source, but his assessment is not consistent with the evidence as a whole." AR 23. Plaintiff argues the ALJ did not provide sufficient reasons for discounting his opinion. Pl.'s Mot. at 9-10. The Court disagrees.

As a preliminary matter, Mr. Inesi is not an acceptable medical source and his opinion may therefore be afforded less weight. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect … what you can still do despite impairment(s), and your physical or mental restrictions."); *Michalski v. Colvin*, 2016 WL 4585770, at *4 (N.D. Cal. Sept. 2, 2016) (MFT opinion entitled to less weight). Thus, the ALJ need only provide germane reasons for discounting the statement. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Plaintiff asserts that the fact that Mr. Inesi is an MFT is not an appropriate reason for discrediting the opinion because the agency's rules recognize the validity of opinions from clinicians other than acceptable medical sources. Pl.'s Mot. at 10. Indeed, the agency's policy guidance recognizes that information from "other sources" may be based on special knowledge of a claimant and may provide insight into the severity of a claimant's impairments and how they

affect the claimant's ability to function. *See* Social Security Ruling ("SSR") 06-03p (Considering Opinions and Other Evidence from Sources Who Are Not Acceptable Medical Sources).[7] Thus, opinions from other sources, like all evidence of record, warrant consideration in the disability determination process. *Id.* The policy does not, however, require that an ALJ give any particular weight to the opinion. As explained in Ruling 06-03p, although the factors listed in 20 C.F.R. § 404.1527(d) explicitly apply only to medical opinions from acceptable medical sources, they represent basic principles that apply to consideration of opinions from other medical sources. Those factors include how long the source has known and how frequently the source has seen the claimant, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, and whether the source has special expertise related to the claimant's impairment. SSR 06-03p. Plaintiff argues: "Had the ALJ properly applied the correct legal standard, she would have accorded more weight to MFT Inesi's opinion." Pl.'s Mot. at 11. But he fails to identify what that "correct legal standard" is, as the ALJ need only provide germane reasons for the weight accorded Mr. Inesi's statement. Assuming one considers the factors set forth in Ruling 06-03p to be the "correct legal standard" for evaluation of a non-acceptable medical source's opinion, Plaintiff fails to show that the unsupported, unexplained opinion of a clinician whose only documented relationship with Plaintiff is filling out a checklist form on his behalf warrants greater weight.

Plaintiff next argues that the ALJ's second reason for discounting the opinion, – inconsistency with the evidence as a whole – is not specific, legitimate, or supported by substantial evidence. *Id.* at 10. Contrary to Plaintiff's argument, inconsistency with the record is a specific and appropriate reason for discounting a medical opinion. *See* 20 C.F.R. § 404.1527(c)(4). Mr. Inesi's opinion is a check-the-box form that contains no clinical observations, no supporting

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations"). SSR 06-03p was rescinded effective March 27, 2017, and does not apply to claims filed after that date.

treatment records, no description of Plaintiff's alleged impairments, no narrative explanation, and no explanation of Mr. Inesi's relationship with Plaintiff. AR 536-37. In fact, Plaintiff had no recollection of any examination by Mr. Inesi. AR 66-67. Further, in contrast to Mr. Inesi's opinion, mental status findings throughout the record are frequently unremarkable. AR 441, 450, 506, 510, 514, 548. The ALJ evaluated all the medical evidence and it is "solely the province of the ALJ to resolve" such conflicts in medical opinion evidence. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). It is not this Court's role to second-guess the ALJ's resolution of conflicting medical testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Accordingly, because the ALJ provided specific and legitimate reasons for her evaluation of Mr. Inesi's opinion, and substantial evidence supports the ALJ's findings, the decision must be affirmed.

### 3. Dr. Spivey

The ALJ assigned "great weight" to Dr. Spivey's opinion that Plaintiff had mild to moderate mental limitations because the opinion was supported by relevant evidence and an explanation, and it was generally consistent with Plaintiff's activities of daily living. AR 22, 478-81. Plaintiff argues Dr. Spivey's evaluation was neither as comprehensive nor in-depth as Dr. Wiebe's evaluation; as Dr. Wiebe's report is 18 pages in length while Dr. Spivey's report is four. Pl.'s Mot. at 11. Plaintiff further argues that Dr. Spivey's conclusions are internally inconsistent with her objective test results and mental status examination findings because these showed significant cognitive deficits in many areas including IQ, verbal comprehension, reasoning, calculations, processing speed, memory, attention. *Id.* (citing AR 479-81). He maintains Dr. Spivey's opinion "is the only opinion inconsistent with the mental health evidence and opinions in the record, as well as with her own objective exam results." *Id.* at 11-12.

In reviewing Dr. Spivey's opinion, the Court notes that her test results showed Plaintiff had deficits across areas including verbal comprehension, reasoning, calculations, processing speed, memory, calculation, abstraction ability, and he had borderline to extremely low IQ scores. AR 479-80. However, she questioned the validity of the test results, noting that Plaintiff made little effort on the test and responded "I do not know" after numerous questions, when the answers

17

could have been worked out with minimal effort. AR 480. Dr. Spivey also observed that Plaintiff described symptoms of anxiety and complained of paranoia, but he did not display any symptoms of anxiety. AR 480. In fact, he was alert and oriented, with neutral mood and affect. AR 479. These findings are consistent with the limited treatment and normal mental status findings throughout the record. AR 441, 450, 506, 510, 514, 516-33, 548. "[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4); 20 C.F.R. § 416.927(c) (when evaluating opinions, ALJ appropriately considers supportability, consistency with evidence in the record, and factors that tend to support or undermine the opinion, among other things). Accordingly, the Court finds the ALJ did not err in assigning great weight to Dr. Spivey's opinion.

**D.     Step Two**

At step two in the analysis, the ALJ determined Plaintiff had the following severe impairments: alcohol abuse, anxiety disorder, and antisocial personality disorder. AR 18. Plaintiff argues the ALJ erred in finding his neurocognitive disorder, specific learning disorder, PTSD, and major depressive disorder were not severe for three reasons. First, he notes that it is unclear whether the ALJ found these to be nonmedically determinable impairments or medically-determinable impairments, which affects the ALJ's assessment of his RFC. Pl.'s Mot. at 12. Second, he argues the ALJ failed to discuss his major depressive disorder. *Id.* Third, Plaintiff contends that had the ALJ properly evaluated the evidence, she would have determined that his PTSD, major depressive order, neurocognitive disorder, and learning disorder constitute severe impairments. *Id.* at 13-14. In response, Defendant notes that Plaintiff did not mention these disorders when he applied for disability, despite being asked to list all conditions that limited his ability to work, and these alleged impairments were introduced shortly before the hearing with little mention of them throughout the treatment records. Def.'s Mot. at 17.

Step two serves as a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is to determine whether the claimant has a "medically severe impairment or combination of impairments." *Id.* A severe impairment is that "which significantly limits [a claimant's] physical or mental ability to do basic

1 | work activities." 20 C.F.R. § 404.1520(c). The claimant has the burden at step two to show that

2 | he has a severe impairment. *Bray*, 554 F.3d at 1222.

3 | Here, the Court finds the ALJ did not err in finding these disorders are not severe

4 | impairments. As a preliminary matter, a diagnosis alone does not establish disability. *Matthews v.*

5 | *Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient

6 | proof of a disability."); *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the

7 | appellant clearly [has] diabetes, high blood pressure, and arthritis, there is no evidence to support

8 | his claim that those impairments are 'severe.'"). To show that an impairment is severe, a claimant

9 | must show that the impairment is medically-determinable, meets the 12-month duration

10 | requirement at 20 C.F.R. § 404.1509, and significantly limits the claimant's ability to do basic

11 | work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1521(a). Basic work activities include

12 | physical functions such as walking, standing, sitting, and lifting; and mental functions such as

13 | understanding, carrying out, and remembering simple instructions, using judgment, responding

14 | appropriately to supervisors and coworkers, and dealing with changes in a routine work setting.

15 | 20 C.F.R. § 404.1521(b).

16 | The ALJ considered Plaintiff's allegations of PTSD but found there was no documentation

17 | in the record of any events that triggered flashbacks, no documentation of any significant

18 | treatment for this alleged condition, and no evidence that this condition affected Plaintiff for at

19 | least 12 continuous months. AR 18. In fact, Plaintiff first mentioned issues with depression,

20 | anxiety, and cognition after he filed for disability, curious about how antidepressant medication

21 | might help with pain management. AR 18, 424-25. A single treatment record from September

22 | 2014 referenced PTSD. AR 429-30. It showed a diagnosis of PTSD based on Plaintiff's

23 | endorsements of PTSD symptoms, such as hypervigilance, nightmares, flashbacks, and avoidance,

24 | as findings on mental status examination just two weeks earlier were completely normal. AR 18,

25 | 430, 441. The only other mention of flashbacks in the record are in Dr. Wiebe's report two-and-a-

26 | half years later, when Plaintiff reported flashbacks. AR 523, 528. As the ALJ noted, the record

27 | does not contain any reports of specific events or places that trigger flashbacks, and the normal

28 | psychiatric findings on multiple occasions do not support the allegations of ongoing PTSD. AR

18. Accordingly, the ALJ found no evidence to show that PTSD affected Plaintiff for a continuous period of at least 12 months, as required to show a severe impairment. The ALJ also considered Plaintiff's allegations of learning disorder and neurocognitive impairment, again first alleged at the administrative hearing in April 2017, and found that there was no diagnosis by a treating clinician and no treatment for cognitive impairment, even though Plaintiff was incarcerated on many occasions and had health services available. AR 18-19. The ALJ also found the allegations were inconsistent with Plaintiff's work history, school records, and the lack of any cognitive complaints in the treatment records. AR 19, 242-46. Based on this record, the ALJ correctly found these disorders were not severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c) (whether an impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities" is a finding that falls within the purview of the ALJ, not a physician). Although the ALJ did not specifically address major depressive disorder, such a diagnosis alone does not establish disability, and Plaintiff fails to show how the impairment is medically-determinable, meets the 12-month duration requirement at 20 C.F.R. § 404.1509, and significantly limits his ability to do basic work activities. *Matthews*, 10 F.3d at 680; 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1521(a).

Regardless, even if the Court were to find the ALJ committed any error at step by failing to specifically address Plaintiff's major depressive disorder, "[o]missions at step two are often harmless error if step two is decided in plaintiff's favor." *Martinez v. Berryhill*, 2017 WL 5900191, at *14 (N.D. Cal. Nov. 30, 2017) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)); *Garcia v. Comm'r of Soc. Sec.*, 587 Fed. App'x 367, 370 (9th Cir. 2014) (any error in not identifying depression as severe at step two was harmless because "the ALJ proceeded through the entire sequential analysis, carefully considering all of [the] mental health records in assessing her [RFC]") (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that where the ALJ considered evidence of limitations posed by claimant's bursitis at step four, any error in failing to consider bursitis severe at step two was harmless)); *Raymond G. v. Comm'r of Soc. Sec.*, 2019 WL 1332399, at *19 (N.D. Cal. Mar. 25, 2019) (where ALJ found PTSD was not severe at step two, any error in that determination was harmless because ALJ proceeded through the entire sequential

analysis). If the ALJ finds that a claimant has a severe impairment or combination of impairments, the analysis continues, and any error in not specifically identifying an additional impairment is of no consequence, as the ALJ must consider the combined effect of all impairments, both severe and otherwise, in assessing RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (discussing the step two evaluation), 404.1523 (addressing multiple impairments).

Here, the ALJ found Plaintiff had the severe impairments of alcohol abuse, anxiety disorder, and antisocial personality disorder. AR 18. Because the ALJ found in favor of Plaintiff at step two, the sequential evaluation process continued to step three. "Thus, as the ALJ found Plaintiff had [at least] one severe impairment and moved on to complete the sequential analysis, giving consideration to all her severe and non-severe impairments, any error in failing to name additional impairments as severe is harmless." *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018) (citing *Tommasetti*, 533 F.3d at 1042-43). Even if Plaintiff were able to show that these impairments were severe, absent a showing that they result in limitations not accounted for in the RFC, any error in not identifying the impairments as severe is of no consequence. In assessing RFC, the ALJ is required to consider all impairments, even those found not severe at step two. 20 C.F.R. § 404.1545(a)(2). Here, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; and maintaining concentration, persistence, or pace; and mild limitations in adapting and managing himself. AR 19-20. Considering these limitations, the ALJ found that Plaintiff could perform simple, routine, repetitive tasks, and he was limited to occasional interaction with the general public, coworkers, and supervisors. AR 20. Plaintiff not only fails to show that these additional impairments are severe, he fails to show that they would result in any limitations not already accounted for in the RFC. *See Lewis*, 498 F.3d at 911 (finding harmless error where ALJ did not include an impairment as 'severe' at step two, but included limitations stemming from the impairment in the RFC). Accordingly, the Court finds the ALJ did not commit reversible error at step two, and the ALJ's decision must be affirmed.

**E.    Credibility**

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause his symptoms but his testimony concerning the persistence and limiting effects of these symptoms were not consistent with the medical evidence and other evidence of record. AR 21-22. Plaintiff argues the ALJ failed to provide clear and convincing reasons or to consider the entire case record in finding that his testimony about the severity and frequency of his symptoms was not credible. Pl.'s Mot. at 5. In response, Defendant argues the ALJ set forth specific and legitimate reasons, explaining how she weighed the allegations and identifying substantial evidence in the record supporting her findings. Def.'s Mot. at 17.

### 1.     Legal Standard

Congress expressly prohibits granting disability benefits based solely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements about pain or other symptoms "will not alone establish" the claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ is, however, required to make specific credibility findings. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); 42 U.S.C. § 423(d)(5)(A)). A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282).

Second, if the claimant has met the first step and "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Courts must not engage in second-guessing, where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record." *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Factors an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (quoting *Light*, 119 F.3d at 792). An ALJ's credibility finding must be properly supported by the record, and sufficiently specific to ensure a reviewing court he did not "arbitrarily discredit" a claimant's subjective testimony. *Id.* at 958 (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Analysis

The ALJ articulated several reasons for finding that Plaintiff's subjective allegations were not wholly reliable. First, the ALJ considered the extent to which Plaintiff's statements were consistent with the objective clinical findings, evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms" and their impact on your ability to work). The ALJ discerned that many of Plaintiff's subjective complaints were

unsupported by objective evidence. AR 18. While Plaintiff complained of disabling back and neck pain, imaging of his lumbar spine showed only mild degenerative changes at L5-S1, and imaging of his cervical and thoracic spine was normal. AR 18, 388-90. Although Plaintiff said he could lift only five pounds and was unable to walk for more than one block, findings on musculoskeletal examinations were unremarkable, showing normal strength and no muscular atrophy. AR 18, 21-22, 273, 474, 441, 502, 514. The record does not document any gait disturbances or limitations in range of motion, and imaging studies generally showed mostly unremarkable or mild findings. AR 19, 388-90, 474, 502. With respect to mental impairments, the ALJ likewise found the objective findings were not consistent with Plaintiff's allegations of wholly disabling impairments. AR 18, 21. *See* 20 C.F.R. § 404.1502(g) (psychological abnormalities must be shown by observable facts that can be medically described and evaluated, apart from an individual's statement of symptoms). Treatment records consistently reflect that Plaintiff was alert and cooperative, oriented to time, place, person, and situation, with appropriate mood and affect, normal insight, and normal judgment. AR 18-19, 21, 441, 450, 502, 506, 510, 548. Clinicians further noted that he voiced good understanding of treatment and could respond appropriately to questions. AR 18, 371, 403. This objective medical evidence is not consistent with Plaintiff's allegations of disabling back, neck, and mental impairments. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while claimant's statements "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor").

The ALJ further noted that Plaintiff's course of treatment was not consistent with his allegations of disabling impairments. AR 18, 21; *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (medication, course of treatment other than medication, and other measures a claimant employs to alleviate alleged symptoms are properly considered in the consistency analysis). For most of the alleged period of disability, Plaintiff took no medications. AR 19, 21, 344, 369, 380, 401, 415, 438, 440. The record indicates that Dr. Barnett first prescribed medication for sleep and pain in September 2014, a full decade after Plaintiff's alleged onset of disability. AR 435. Moreover, Plaintiff received only conservative treatment; there is no evidence of record suggesting that he

24

United States District Court
Northern District of California

required surgery or hospitalization for any allegedly disabling impairment. AR 21. In June 2013, Plaintiff stated that he had "no past medical history" other than a surgical repair of a stab wound in his neck 13 years earlier. AR 380. Conservative treatment is inconsistent with subjective allegations of disabling symptoms. *Tommasetti*, 533 F.3d at 1039-40.

Likewise, Plaintiff had virtually no treatment for his mental impairments. AR 18, 67, 479. Plaintiff denied any history of treatment for psychiatric issues, acknowledging that he had never been in a psychiatric facility or taken any psychiatric medications. AR 479. Even though he was incarcerated many times, he was never flagged for mental health treatment while in prison. AR 19, 74. Plaintiff first had a psychiatric diagnostic evaluation in September 2014, two months after he filed for disability and 10 years into his alleged period of disability, after he told his primary care doctor he could not work as a condition of receiving state General Assistance because he could not be around other people, but there is no indication that he continued with a course of therapy. AR 67, 432. Plaintiff's brief course of treatment is not consistent with allegations of disabling mental or physical impairments. AR 18.

In evaluating Plaintiff's subjective claims, the ALJ further observed that he was noncompliant with the treatment he did pursue. AR 21. He did not follow up with appointments despite receiving multiple reminders from clinicians, failed to participate in a single session of physical therapy beyond the initial evaluation, and did not follow up on counseling. AR 21, 373, 377, 401, 498, 501. Plaintiff's noncompliance with treatment recommendations suggests his pain and other impairments are not as limiting as he alleged them to be. AR 21.

In addition to the inconsistencies between Plaintiff's allegations and the objective clinical evidence, the ALJ identified other bases for discounting his allegations. *See* 20 C.F.R. § 416.929(c)(3) (after considering consistency with the objective medical evidence, the ALJ considers whether and to what extent the claimant's subjective statements are consistent with "other evidence" in the record, such as treatment, daily activities, and other factors). The ALJ noted that Plaintiff claimed he barely left his house, but at one point he cancelled medical appointments because he was traveling out of the country. AR 22, 371-72, 383, 387. The ALJ also noted Plaintiff could take care of personal hygiene, maintain good grooming, and shave his

25

head.  AR 19, 257, 479, 520.  He could go out alone, to the barber, or shopping for groceries, clothes, and candy.  AR 18, 20, 61, 72-73, 258, 271, 424, 520, 524.  He went outside every day, watched television and sports, and played video games.  AR 55, 258-59, 271, 524.  Although he claimed to have no friends and no relationship with family members, the record shows that he lived with a girlfriend and could rely on his brother for transportation on occasion.  AR 20, 370, 377, 380-81, 391, 402, 480.  The ALJ found that while Plaintiff's activities may have been limited by his impairments, they did not appear to be as limited as he alleged them to be.  AR 18-20; *see Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (finding that a claimant's self-reported activities suggested a higher level of functionality than claimant alleged); *Molina*, 674 F.3d at 1112-13 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").  And, even if Plaintiff's activities were not particularly extensive, the ALJ's conclusion that he was not as limited as he claimed was a reasonable and valid basis for discounting his self-reported symptoms.  *Molina*, 674 F.3d at 1112-13 ("Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Valentine*, 574 F.3d at 694 (the ALJ properly determined that the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities . . . are inconsistent with the degree of impairment he alleges").

The ALJ noted other inconsistencies in Plaintiff's representations that undermined his subjective allegations of disabling symptoms.  AR 21-22.  Although Plaintiff contends that he is unable to work due to disabling pain, he represented to various clinicians that he was feeling well overall and was not taking any medications.  AR 19, 21, 282, 310, 369, 377, 387, 424.  He claimed he was in constant back and neck pain, yet treatment records showed that he denied any tenderness in those areas on examination.  AR 22, 392, 403.  He testified at the hearing that he had been losing weight due to his impairments, yet he denied weight loss concerns when talking to clinicians.  AR 22, 59, 369, 272.  He claimed he could not walk far, yet his doctors observed that he was able to climb two flights of stairs comfortably.  AR 369, 377, 380.  He claimed he could lift only five pounds, but at the hearing, he testified that he could lift 15 pounds.  AR 21-22, 60,

273. He represented that he did not know how to drive and did not have a license, yet he had past work as a truck driver. AR 244, 271, 478. Plaintiff's representations that he was feeling well, his denial of tenderness during examinations, and other inconsistencies all contradict his allegations of disabling pain and other limitations.

Plaintiff criticizes the ALJ analysis of daily activities, alleging she disregarded his testimony that he had not left his house since grocery shopping at the first of the month and did not consider whether he had difficulty leaving his house. Pl.'s Mot. at 16. The Court notes that on October 7, 2014, Plaintiff told a therapist he had not left his house since he went shopping with food stamps on the first of the month. AR 424. However, Plaintiff did not explain why he did not leave his house and he did not report that he had difficulty leaving his house due to any impairments. *Id.* As the therapist noted, Plaintiff's primary concern that day was getting his narcotic pain medication refilled. *Id.* Regardless, contrary to Plaintiff's argument, the ALJ did consider his representations that he could not leave his house due to his inability to be around the public but found that it was inconsistent with other evidence of record, including traveling out of the country and shopping. AR 22. Even if Plaintiff did not leave his home frequently, or he experienced some discomfort when he did leave his home, this is not inconsistent with the ALJ's finding that he could do so, along with other daily activities. An ALJ is not required to discuss every piece of evidence; she need only discuss evidence that is significant and probative. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). By pointing out the specific inconsistencies in Plaintiff's testimony, the ALJ permissibly engaged in "ordinary techniques of credibility evaluation" and properly found Plaintiff not fully reliable. *See Burch*, 400 F.3d at 680 (ALJ permitted to "engage in ordinary techniques of credibility evaluation, such as considering . . . inconsistencies in [the plaintiff's] testimony"); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence.").

Finally, Plaintiff argues that "even if there were times when [he] did not take medication, that is still not a legitimate ground to reject his testimony as it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Pl.'s

Mot. at 16-17 (citing *Nguyen*, 100 F.3d at 1465) (finding it questionable to "chastise" one with a mental impairment for failure to seek psychiatric treatment, where the claimant had neither sought nor received any mental health treatment). However, Plaintiff is not someone who failed to "recognize that [his] condition reflects a potentially serious mental illness." *Id.* He alleged disability due to purported paranoia and claustrophobia, indicating that he is aware of his condition, but testified he did not get treatment because he did not "like being at hospitals or around doctors" and that he did not follow through with a recommendation for counseling because he never received a referral letter. AR 72-73, 248. Regardless, there is no indication the ALJ chastised Plaintiff for not seeking rehabilitation; she found that his "conservative treatment and multiple reports that he is not on any medications severely undermines the limiting effects of his physical and mental conditions." AR 22. Even if the Court were to determine the ALJ made this finding an error, it would be harmless because, as discussed above, the ALJ provided a number of other reasons for finding that his subjective allegations were not wholly reliable.

Because the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony, and her decision is supported by substantial evidence, the Court finds the ALJ's decision must be affirmed.

## F.     Step Three

Plaintiff argues that had the ALJ not erred in her evaluation of the medical evidence, she would have determined that his conditions meet or equal a listed impairment at step three of the sequential evaluation process. Pl.'s Mot. at 17. Although the ALJ did find he has two severe mental impairments (an anxiety disorder and a personality disorder), Plaintiff maintains she erred in not discussing how those disorders affect him in combination, which would result in more severe limitations. *Id.* at 18. In response, Defendant argues the ALJ acknowledged that she considered Plaintiff's impairments in combination, but Plaintiff misunderstands the distinction between a diagnosis and an impairment. Def.'s Mot. at 20-21. Defendant notes the ALJ considered listings 12.04, 12.05, 12.06, 12.08, 12.11, and 12.15 and found that because Plaintiff had no marked or extreme limitations in any broad area of functioning, his mental impairments were not of listing-level severity. *Id.* at 20.

### 1. Legal Standard

At step three in the sequential process, an ALJ must consider whether a claimant's conditions meet or equal any of the impairments outlined in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). The listings describe impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(d). The claimant bears the burden of establishing a prima facie case of disability under the listings. *See Thomas*, 278 F.3d at 955; 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment meets a listing when *all* the medical criteria required of that listing is satisfied. 20 C.F.R. § 404.1525(c)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment. . . ." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526(a)).

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)). However, "'[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'" *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)). Further, an impairment does not meet the criteria of a listing based only on a diagnosis. 20 C.F.R. § 404.1525(d); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment

that manifests only some of those criteria, no matter how severely, does not qualify."); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).

### 2. Analysis

Without identifying the specific criteria of any listing or explaining the reasoning behind his position, Plaintiff argues that the ALJ should have determined his conditions meet listings 12.04, 12.05, 12.06, 12.08, 12.11, and 12.15. Pl.'s Mot. at 17. However, he does not point to any evidence showing the ALJ erred or that his impairments—either singly or in combination—met or equaled the requirements of a specific listing. *See Lewis*, 236 F.3d at 514 (claimant "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment" and did not "point[ ] to evidence that shows that his combined impairments equal a listed impairment."). Regardless, having reviewed the record, the Court finds the ALJ performed the required review under 20 C.F.R. § 416.920a.

In her decision, the ALJ found Plaintiff had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence, or pace; and mild limitations in self-management. AR 19-20. The ALJ specifically considered mental listings 12.04, 12.05, 12.06, 12.08, 12.11, and 12.15, finding that "[t]he severity of [his] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings." AR 19. Despite this, Plaintiff argues the ALJ did not consider the combined effects of his impairments, and rather considered his impairments only in isolation. Pl.'s Mot. at 18. Specifically, Plaintiff contends that "at no point does the ALJ discuss how the effects of [Plaintiff's two impairments,] anxiety and personality disorder affect him in combination." *Id.* However, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or [to] compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. Plaintiff points to no such evidence here, nor does he identify any particular listing that he meets or equals, much less explain how he meets or equals it. Merely alleging ALJ error does not warrant remand. *See Molina*, 674 F.3d at 1111 (a court "may not reverse an ALJ's decision on account of an error that is harmless" and "'the burden of showing

that an error is harmful normally falls upon the party attacking the agency's determination'")
(quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

In any event, the ALJ specifically acknowledged that she considered Plaintiff's impairments in combination. AR 19. She also cited specific evidence in support of her decision, including Plaintiff's reports that he does not need special reminders to complete his grooming needs and take his medication; that he is able to pay bills, count change, and handle a savings account; that treatment notes describe him as alert and cooperative, with "good understanding," and that he communicates comfortably; that he attended college; that he has a girlfriend and is able to live with a roommate and able to go out on his own, including shopping; that he watches television, plays games on his phone, makes his bed, does laundry, and sweeps; and that he reported no problem taking care of his personal care needs like dressing and bathing. AR 19-20. Although Plaintiff disagrees with the ALJ's evaluation of the evidence, he does not cite any treatment records to rebut the ALJ's findings.

Since the record reflects no more than moderate mental limitations, the Court finds the ALJ properly evaluated the relevant evidence. And, since Plaintiff did not have at least two marked limitations or one marked limitation and repeated episodes of decompensation, he did not meet a mental disorder listing. *See* 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00C. Accordingly, the Court finds the ALJ's determination that Plaintiff's impairments did not meet or equal a listed impairment was supported by substantial evidence in the record as a whole, and the decision must be affirmed.

**G.     RFC**

Next, Plaintiff argues the ALJ erred in determining his RFC. Consisting of two sentences, Plaintiff's entire argument is as follows: "Had the ALJ not erred in evaluating the medical evidence, she would have included [his] moderate and marked mental impairments in his RFC. AR 532-533, 536-537. The ALJ's determination of [his] RFC is based on legal error, and is not supported by substantial evidence." Pl.'s Mot. at 19. In response, Defendant argues the ALJ discusses the evidence of record supporting here RFC assessment throughout the decision and, "[r]ather than responding to this evidence, Plaintiff simply declares that greater limitations were

31

warranted." Def.'s Mot. at 22.

RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed by considering all the relevant evidence in a claimant's case record. *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). When a case is before an ALJ, it is the ALJ's responsibility to assess a claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 416.927(c)(4).

After consideration of the record, the ALJ found Plaintiff could perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations: he could lift and or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six hours each in an eight-hour workday; frequently perform all postural activities; and his is limited to simple work, with routine and repetitive tasks; he could occasionally interact with the general public, coworkers, and supervisors. AR 20. Although Plaintiff argues the ALJ erred in evaluating the evidence, the Court disagrees. As discussed above, the ALJ correctly assigned little weight to Dr. Wiebe's and Mr. Inesi's opinions because the marked limitations opined therein were inconsistent with the evidence of record, including Plaintiff's limited treatment and normal mental status findings. Further, the Court notes that RFC is an administrative finding, not a medical determination, and need not match any physician's opinion. *See* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner"); *Vertigan*, 260 F.3d at 1049 ("[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"). The ALJ is responsible for assessing a claimant's RFC based on the record as a whole. *See* 20 C.F.R. § 416.945(a).

Accordingly, the Court finds substantial evidence supports the ALJ's RFC assessment and the ALJ's decision must be affirmed.

**H.      Step Five**

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found he was not disabled because jobs exist in significant numbers in the national economy that he could perform.  AR 24.  Plaintiff argues the ALJ's finding is insufficient because it is not supported by vocational expert testimony.  Pl.'s Mot. at 20.  He notes the ALJ made nonexertional limitation findings (*see* AR 19-20 (moderate limitations in understanding, remembering or applying information; moderate limitation in interacting with others; moderate limitations of concentrating, persisting or maintain pace; and mild limitations of adapting and managing himself)), yet made no mention of these limitations in her RFC findings.  Pl.'s Mot. at 20.  Plaintiff further argues the ALJ's analysis under SSR 85-15 was in error because she "seems to suggest that 'interaction with the general public, coworkers and supervisors' is somehow qualitatively different that the ability to 'respond appropriately to supervision, coworkers and usual work situations.'"  *Id.* at 21.  Finally, Plaintiff argues the ALJ failed to assess how his nonexertional limitations erode the occupational base as required by SSR 9-9p.  *Id.*

In response, Defendant argues the ALJ's citation to SSR 85-15 "is on point and provides sufficient support for the conclusion that the non-exertional limitations, including the limitation to non-public tasks, have little effect on the occupational base of unskilled work at all exertional levels."  Def.'s Mot. at 22.  Defendant further argues the ALJ was not precluded from relying upon the grids rather than a vocational expert's testimony because Plaintiff's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations.  *Id.* at 23.

**1.      Legal Standard**

At step five of the sequential analysis, which occurs after a finding that a severe impairment prevents a claimant from performing past work, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which he can perform.  20 C.F.R. §§ 404.1520(g); 404.1560(c); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  Where a claimant suffers from exertional impairments, the ALJ refers to the medical-vocational guidelines or "grids," which

"present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsbury*, 468 F.3d at 1114 (citing *Tackett*, 180 F.3d at 1101). "The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category." *Id.* "A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress—a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.* at 1114-15 (citing *Tackett*, 180 F.3d at 1101).

In cases where the claimant has only exertional limitations, "the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. *Lounsbury*, 468 F.3d at 1115. "The reason for this limitation on the grids' application is that, despite having the residual functional capacity to perform a full range of unskilled occupations at a given exertional level, a claimant may not be able to adjust to these jobs because of non-exertional limitations." *Id.* "In particular, non-exertional impairments—including postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching—may, if sufficiently severe, limit a claimant's functional capacity in ways not contemplated by the grids." *Id.* Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must still consult the grids first. *Id.*

Alternatively, the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101; *see also* SSR 00-4p1, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.").

### 2. Analysis

As noted above, the ALJ found Plaintiff could perform light work with certain exertional

limitations: he could lift and or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six hours each in an eight-hour workday; frequently perform all postural activities; and his is limited to simple work, with routine and repetitive tasks; he could occasionally interact with the general public, coworkers, and supervisors. AR 20. She also determined Plaintiff had nonexertional limitations, but they "had little or no effect on the occupational base of unskilled light work." AR 24. The ALJ did not call a vocational expert.

Plaintiff first argues the ALJ was required to consult a vocational expert because the grids do not accurately describe his abilities and limitations. Pl.'s Mot. at 20. However, the mere existence of nonexertional limitations "does not automatically preclude application of the grids." *Tackett*, 180 F.3d at 1101. Use of the grids is only precluded if the ALJ determines that the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* at 1102. Further, where a claimant suffers from both exertional and nonexertional limitations, the ALJ must consult the grids first. *Lounsbury*, 468 F.3d at 1115. Here, the ALJ specifically considered Plaintiff's nonexertional limitations and found they would not have a significant limitation on the relevant job base. AR 24. The record supports this finding, with frequently unremarkable mental status findings and limited treatment throughout. AR 23, 441, 450, 506, 510, 514, 516-33, 548. As such, it was not error for the ALJ to consult the grids. *Lounsbury*, 468 F.3d at 1115.

Plaintiff next argues the ALJ erred because she misstates the nonexertional limitations in the context of SSR 85-15 and 96-9p. Pl.'s Mot. at 21. Ruling 85-15 provides that "[i]f a person has a severe medically determinable impairment which, though not meeting or equaling the criteria in the Listing of Impairments, prevents the person from doing past relevant work, it must be determined whether the person can do other work." 1985 WL 56857, at *1. Ruling 96-9p provides that "once it has been determined that an individual is not engaging in substantial gainful activity and has a 'severe' medically determinable impairment(s) which, though not meeting or equaling the criteria of any listing, prevents the individual from performing past relevant work (PRW), it must be determined whether the individual can do any other work, considering the individual's RFC, age, education, and work experience." 1996 WL 374185, at *1.

The Court finds the ALJ correctly applied these standards. Although Plaintiff argues the ALJ's RFC finding makes no mention of his nonexertional limitations, the ALJ specifically considered these limitations and found they would not have a significant limitation on the relevant job base. AR 24 ("as long as the claimant is able [to] understand, remember, and carry out simple instructions, make judgments that are commensurate with the functions of unskilled work, respond appropriately to supervision, co-workers and usual work situations, deal with changes in a routine work setting, the unskilled occupation base is not eroded."). The ALJ also noted that "[i]nteraction with the general public, coworkers, and supervisors is not one of the basic mental demands generally required by competitive, remunerative work, the limitation of which would substantially erode the occupational base." *Id.* Even if an individual has the ability to do less than a full range of work, this "does not necessarily equate with a decision of 'disabled.'" SSR 96-9p, 1996 WL 374185, at *1. "[C]onsideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." *Id.*

The grids provide that "[t]he functional capacity to perform a wide or full range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs, and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competencies for unskilled work." 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00(b). Here, Plaintiff's limitations cannot be said to deprive him of the functional capacity to perform a wide range of light work. Moreover, an individual capable of performing light work is also capable of performing sedentary work (in the absence of limiting factors not present here), as noted in the grids. 20 C.F.R. § 416.967(b); *id.* Part 404, Subpart P, App. 2, § 202.00(a). Therefore, the ALJ did not err by concluding that Plaintiff's nonexertional limitations were insufficiently severe to warrant vocational expert testimony. *See* SSR 96-9p (noting that postural limitations related to climbing, balancing, kneeling, crouching, or crawling "would not usually erode the occupational base for a full range of unskilled sedentary work" and that "restriction to occasional stooping" would "only minimally erode the unskilled occupational base of sedentary

work"); SSR 85-15 (noting that limitations in climbing and balancing "would not ordinarily have a significant impact on the broad world of work"; limitations in kneeling and crawling would have almost no impact on the occupational base; and limitations in crouching would limit the occupational base for "medium, heavy, and very heavy jobs," but not for light or sedentary work; and "[i]f a person can stoop occasionally . . . the sedentary and light occupational base is virtually intact").

The ALJ also did not err in determining that Plaintiff's mental limitations were insufficiently severe to warrant vocational expert testimony. As discussed above, Plaintiff was assessed with only mild to moderate limitations in some areas of mental functioning, and the ALJ properly concluded that his mental impairments were insufficiently severe to warrant vocational expert testimony. *See Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (holding that step-two findings that claimant was moderately limited in several areas of mental functioning did not preclude ALJ's reliance on grids without use of vocational expert).

Accordingly, the Court finds the ALJ's step five determination is supported by substantial evidence in the record and free of legal error. The decision must therefore be affirmed.

## VI.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: September 16, 2019

THOMAS S. HIXSON
United States Magistrate Judge